Dissenting Opinion
Paul C. Wilson, Judge
I agree that the trial court applied the correct version of 19 CSR 25-30.051(2) in this case, but I write separately because nothing in this regulation requires that breath analyzers be calibrated with three different solutions. Instead, the Department of Health and Senior Services regulations require only that the three solutions approved for use in calibrating breath analyzers be obtained from approved suppliers and that they conform to stated standards (i.e., that they not vary more than five percent from the intended strength). The Director laid a proper foundation for admission of the breath test results, and the trial court should not have excluded those results from evidence. Accordingly, I would vacate the judgment of the trial court and remand.
The fundamental flaw in Ms. Stiers’ argument is that 19 CSR 25-30.051(2) does not address how many different solutions must be used in testing a breath analyzer. Instead, this regulation merely identifies which solutions may be. used. As discussed below, 19 CSR 25-30.060(3) is the *621 only regulation that expressly addresses how the particular breath analyzer at issue in this case (i.e., the Aleo-Sensor IV) is to be tested, and nothing in this regulation (or the form promulgated with it) can fairly be read to require the use of all three different strength solutions.
Even though 19 CSR 25-30.051 does not address how many solutions must be used to test a breath analyzer and 19 CSR 25-30.060 does, Ms. Stiers’ argument rests solely on the fact that the three strength solutions approved for use under 19 CSR 25-30.051(2) are separated by the word “and,” which Ms. Stiers insists must be read to mean that all three approved solution strengths must be used every time any breath analyzer is tested. This argument ignores the language of the rest of 19 CSR 25-30.051, the language of other relevant regulations, and the obvious intent' of these regulations as demonstrated by both the prior and -subsequent versions of 19 CSR 25-30.051.
The regulation on which Ms. Stiers builds her argument, 19 CSR 25-30.051, states in pertinent part:
(1) Standards used for the purpose of verifying and calibrating breath analyzers shall consist of standard simulator solutions or compressed ethanol-gas standard mixtures.
(2) Standard simulator solutions, used to verify and calibrate evidential breath analyzers, shall be solutions from approved suppliers. The standard simulator solutions used shall have a vapor concentration within five percent (5%) of the following val-, ues:
(A) 0.10%;
(B) 0.08%; and
(C) 0.04%
* * #
(5) Compressed ethanol-gas standard mixtures used to verify and calibrate evidential breath analyzers, shall be mixtures provided from approved suppliers; ■ The .compressed ethanol-gas mixtures used shall have a concentration within five percent (5%) of the following values:
(A) 0.10%;
(B) 0.08%; and
(C) 0.04%
[[Image here]]
19 CSR 25-30.051 (effective Dec. .30, 2012) (emphasis added).
The first subsection refers to , standard “solutions” and ethanol-gas “mixtures”.because it is addressing the “[standards used for the purpose of verifying and calibrating breath analyzers,” plural. The first sentences of the second subsection then require that “[standard simulator solutions, used to verify and calibrate evidential breath analyzers, shall be solutions from approved suppliers”. Again, the plural “solutions” matches- the use of the plural “breath analyzers.”
The second sentence of subsection (2) is where Ms. Stiers myopically focuses her argument. She contends this sentence means: “The' stahdard simulator solutions used shall have vapor' concentrations within five percent (5%) of ... 0.10%; ... 0.08%; and ... 0.04%.” [Emphasis added.] But that is not what the regulation says. Instead, it reads: ■ “The standard simulator solutions used shall have a vapor concentration within five percent (5%) of ... 0.10%; ■... ,0.08%; and ... 0.04%.” 19 CSR 25-30.051(2) (emphasis added). Grammatically, requiring the plural “solutions” to have “a [singular] vapor concentration” is ambiguous. ■ Requiring “a [singular] vapor concentration” to be within five percent of the three listed values is not only grammatically ambiguous, it is mathematically impossible.
*622 The regulation may be ambiguous, but it is admirably consistent. While some breath analyzers are tested using standard simulator solutions, others are tested using standard compressed ethanol-gas mixtures. Like subsection (2), subsection (5) requires these mixtures to. be obtained from approved suppliers. Subsection (5) then goes on to state: “The compressed ethanol-gas mixtures used'shall ‘have a concentration within five percent (5%) of .... 0.10%; ... 0.08%; and ... 0.04%.” 19 CSR 25-30.051(5) (emphasis added). Again, as in subsection (2), the plural “mixtures” are required'to have “a [singular] concentration” and that concentration must be within five percent of three different values! This, too, is grammatically ambiguous and mathematically impossible.
Ms. Stiers asks this Court to adopt the only construction of this- regulation that is patently absurd and with which it will be practically impossible to comply. She ignores the plural “standard simulator solutions” in subsection (2) and “compressed ethanol-gas mixtures” in subsection (5), which are. used throughout the regulation and which refer to all solutions (or mixtures) from all, approved providers that may be used to test any of the multitude of the approved breath analyzers in use around the state because they are inconsistent with her proposed construction. By the same token, Ms, Stiers ignores -the plain statement in subsection (2) that all solutions “shall have a [singular] vapor concentration” and the equally plain statement in subsection (5) that all mixtures “shall have a [singular] concentration” because these phrases cannot be reconciled with her -construction either.
Instead, Ms. Stiers’ argument focuses solely on the word “and” separating the three approved values in subsections (5) and (7), and she insists that this Court give this word a conjunctive meaning such that all - breath analyzers must be tested at all three different' values. If 19 CSR 25-30.051(2) and- (5) addressed how many tests each breath-analyzer must pass,, this argument may be worthy of further attention. But they do not. 19 CSR 25-30.051(2) and (5) address what solutions or mixtures may be used and which providers may supply them. Nothing more. And, even if these subsections did address the number of solutions or mixtures that must be used in testing each breath analyzer (which they do not), the regulation would be an exercise in futility because no solutions can have “a [singular] vapor concentration”—and no ethanol-gas, mixtures can have “a [singular] concentration”—that is within 5 percent of the three stated values. Ms. Stiers fails to explain why the DHSS would adopt a regulation with which no operator and no test solution could comply, and this Court should not adopt any construction that deads to such an absurd result.
To the contrary, this Court should adopt a construction that gives effect to all of the language of the regulation, to the regulation as a whole, ’and to the surrounding regulations. Giving the word “and” its disjunctive meaning accomplishes this.[1] Read ttiis way, subsections (2) and (5) state that standard solutions or mixtures must be used, they must be obtained from approved suppliers, and they must be one of the three listed strengths. Nothing is added to the regulation, and nothing is taken away.
*623 This construction also is consistent with the language of 19 CSR 25-30.060(3) which, unlike 19 CSR 25-30.051, expressly addresses the question of how the standard solutions are to be used in testing the Aleo-Sensor IV breath analyzer at issue in this case. It provides: “When using the Aleo-Sensor IV with printer, the procedures on the form included herein shall be performed and the form shall be completed.” 19 CSR 25-30.060(3) (emphasis added). -The form promulgated with the regulation addresses several tests that must be conducted regularly by the operator and states in pertinent part:
[[Image here]]
The requirements of this section of the required form are inconsistent with Ms. Stiers’ “three tests using three different strength solutions” construction in many ways.[2] First, and in the only language in this part of the form that DHSS saw fit to emphasize with bold letters, the top line of this section of the form states that only one standard is to be used per maintenance report. As if that were not clear enough, the next sentence instructs- the operator to run '“three tests using a [singular] standard solution,” not three different solutions of different strengths. • Finally, to avoid any confusion, the form requires the operator to identify • which strength solution was used and to report all'-three test scores to ensure that each result was within .005 of that singlé strength (a feat that would be impossible if three tests were conducted using three different strengths).
In an effort to avoid the plain meaning of' the required' DHSS form, Ms. Stiers argues that operators must be required to file three copies of the form, one for each of the three strength solutions. she contends must be used to test to each Aleo-Sensor IV breath analyzer.[3] But this ar *624 gument ignores the language of 19 CSR 25-30.060, which is the only regulation in which the testing requirements are addressed expressly. When using the Alco-Sensor IV, .this regulation requires that “the procedures on the form [singular] included herein shall be performed and the form [singular] shall be completed.” 19 CSR 25-30.060(3) (emphasis added). No fair reading of this requirement supports Ms. Stiers’ argument that multiple forms need be filed.[4] To indulge such an argument, the Court must add words that are not there in order to find a three-form reporting requirement that does not exist.
Ms. Stiers’ construction of 19 CSR 25-30.051(2), which is based solely on inferences she draws from the conjunctive use of the word “and,” not only is inconsistent with the express testing requirements in 19 CSR 25-30.060, but it also is inconsistent with the way in which “and” is used in 19 CSR 25-30.050. This rule identifies the “approved breath analyzers” that may be used under the DHSS regulations. Among the list of approved machines are “Alco-Sensor IV with printer and Intox EC/IR II,” both of which are manufactured by “Intoximeters, Inc.” 19 CSR 25-30.050(1) (emphasis added).[5] As with 19 CSR 25-30.051(2), the use of the word “and” in 19 CSR 25-30.050(1) means that both machines are approved for use, but it does not mean that both machines must be used in each test. Instead, the operator is free to select any one of the approved machines, just as 19 CSR 25-30.051(2) permits the operator to select any one of the approved standard simulator solution strengths.
Finally, even though the intent of 19 CSR 25-30.051 is plain when read in light of its purpose and in harmony with the surrounding regulations, confirmation that Ms. Stiers’ construction is incorrect is readily available when prior and subsequent versions of 19 CSR 25-30.051 are consulted. From July 30, 2004, until December 30, 2012, 19 CSR 25-30.051(2) provided:
(1) Standard simulator solutions, used to verify and calibrate evidential *625 breath analyzers at the 0.10% or 0.100% level, shall be solutions from approved suppliers.
(2) Standard simulator solutions, used to verify and calibrate evidential breath analyzers at the 0.04% or 0.040% level, shall be solutions from approved suppliers.
This regulation is simple and unambiguous. Two solution strengths are approved, and each must be obtained from the list of approved suppliers. There is no suggestion that both strengths must be used and no evidence that anyone ever construed the regulation to impose such a requirement.
On July 2, 2012, the DHSS published a proposed amendment to 19 CSR 25-30.051(2) to promulgate the language of the regulation at issue in this case. Ms. Stiers insists that the purpose of this amendment was to do away with the prior scheme in which operators could test breath analyzers with either of two approved solution strengths and replace it with a scheme in which operators must use all three approved solution strengths each time they test a machine. The stated purpose of the 2012 amendment, however, does not support her argument. Instead, it states:
PURPOSE: This amendment changes the name of the division, chapter, title and purpose of the rule and adds compressed ethanol-gas mixtures as an option for accuracy checks and instrument calibrations in addition to standard simulator solutions. It also makes it necessary for simulators to be recalibrated annually and adds 0.08% as another concentration level available for performing accuracy checks and instrument recalibrations.
Missouri Register, Vol. 37, No. 13, at pp. 1027-28 (July 2, 2012) (emphasis added).
When trial courts began to throw out breath analyzer reports based on the “three tests using three different solution strengths” construction that Ms. Stiers now urges this Court to adopt, the DHSS again amended 19 CSR 25-30.051(2) and (5) to prevent such absurd results. This amendment replaced the unduly scrutinized and unfairly emphasized word “and” in both subsections with the word “or.” The purpose of this change was clearly stated:
PURPOSE: This amendment clarifies which standard simulator solutions of the listed concentrations may be used in verifying and calibrating breath analyzers, as well as the annual checks required on simulators used in conjunction with the standard stimulator solution.
Missouri Register, Vol. 38, No. 20, at pp. 1625-26 (October 15, 2012) (emphasis added).
In the face of an unambiguous intent to allow operators to test breath analyzers with either (but not both) of the approved solution strengths before December 2012 and the unambiguous intent to “clarify” that operators may test breath analyzers with any (but not all three) of the approved solution strengths again in February 2014, there simply is no room to argue that the DHSS actually intended to require operators to test breath analyzers with all three of the approved solution strengths during the intervening 14 months.
If, during this interim period, the plain language of' 19 CSR 25-30.051(2) required three separate tests using three separate solution strengths, I would enforce the regulation regardless of what I might think the DHSS may have meant but mistakenly failed to say. But that is not this case. 19 CSR 25-30.051(2) does not address, what tests must be done; it addresses what solution strengths are approved *626 and where those solutions must be obtained. At worst, 19 CSR 25r-30.051(2) was ambiguous during the 14 months between the unambiguous prior version and the equally unambiguous current version. No fair effort to divine the actual intent of 19 CSR 25-30.051(2) during-this interval could ever reach the conclusion Ms. Stiers asks this Court to reach.
Accordingly, this Court should not interpret 19 CSR 25-30.051(2) to impose additional testing requirements that are not to be found in prior or subsequent versions of this regulation, are not germane to the express purpose of 19 CSR 25-30.051(2) itself, and are inconsistent with the plain language and obvious intent of surrounding regulations. Instead, the only reasonable reading of 19 CSR 25-30.051 is that it approves the use of any one of the three solution strengths but does not require operators to use them all in conducting any particular test. Consistent- with this construction, the trial court erred in refusing to admit the breath analyzer results, and the case should be remanded.

. This Court has long noted that "the word ‘and’ is sometimes construed to mean ‘or’ ... where not to do so would render the meaning ambiguous, or result in an absurdity; or-would be tantamount to a refusal to correct a mistake.” Hawkins v. Hawkins, 511 S.W.2d 811, 813 (Mo.1974).

. Ms. Stiers is not entitled to disregard the language of this form any more than she may • disregard the language of any other part of the rule. Forms promulgated with a regulation are no less a part of that regulation than the text of the rule, and any valid construction of one must account for the other. Cf. Neal v. Neal, 941 S.W.2d 501, 504 (Mo. banc 1997) ("the trial court is required to determine and find for the record the presumed correct child support pursuant to Rule 88.01, utilizing Civil Procedure Form No. 14”).

. Ms. Stiers attempts to bolster her "three form” argument by claiming that six other states require multiple tests with different solution or vapor concentrations. Other states' procedures háve no relevance to the proper construction of the DHSS regulations at issue here, particularly when the other state's regulation unambiguously 'states—as the DHSS regulations do not—that three tests be done with three separate strength solutions. See 67 Pa. Code § 77.26 ("Calibration testing a breath test device shall consist of conducting three separate series of five simulátor tests. *624 One of the series of tests shall use simulator solution designed to give a reading of .10%. One of the series of tests shall use simulator solution designed to give a reading of .05%. The last series of tests shall use simulator solution designed to give a reading above .10% which is a multiple of .05%.”) (emphasis added). Ms. Stiers' argument is further weakened by reliance on other states’ maintenance or operations manuals, which were not part of the record below nor provided to this Court by citation or otherwise. To the extent these materials could be located, it appears that some of them actually undercut Ms. Sti-ers' "three tests on three forms” construction because they expressly require "only one test” when testing breath analyzers from this manufacturer. See Washington BTP Technical Manual, pp. 35, 37 (BTPTechM rev. 003) ("If the [results are within stated limits] ... only one test is necessary”).

. In addition, Ms. Stiers’ "three form” approach is contradictory to all of the other tests required on the form in the DHSS regulation, only a portion of which is quoted above. These steps include checking the digital readouts, the printer, the time and date display, and ensuring that the Alco-Sensor is at the proper temperature. No conceivable purpose would be served by making the operator repeat these (and others) three times in the process of completing the three forms that Ms. Stiers’ construction would require.

. This regulation goes on to list other approved breath analyzers, i.e. the “BAC Data-Master and DataMaster DMT” by a second manufacturer and the "Intoxilyzer, Model 5000 and Intoxilyzer, Model 8000” by a third. 19 CSR 25-30.050(1) (emphasis added). It would be absurd to suggest that operators must buy both of a manufacturer’s breath analyzers merely because they are connected by the word "and.” Instead, the obvious intent of the regulation is to note that each manufacturer has two approved machines, but the operator is free to choose between them.